UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID FEWINS AND MELISSA FEWINS, INDIVIDUALLY AND AS NEXT FRIEND FOR D.A.F., a Minor, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:14-cv-0898-M |
| CHS/COMMUNITY HEALTH SYSTEMS, INC., d/b/a LAKE GRANBURY MEDICAL CENTER, SCOTT JONES, M.D., and QUESTCARE MEDICAL SERVICES, P.A., | § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order sets forth the grounds for the Court's originally pronounced decisions (1) granting the Motion for Summary Judgment [Docket Entry #54], filed by Defendant Granbury Hospital Corporation d/b/a Lake Granbury Medical Center ("LGMC"), and (2) denying the Motion for Partial Summary Judgment [Docket Entry #61], filed by Plaintiffs David Fewins and Melissa Fewins, individually and as next friend for D.A.F., a minor.

I.   Background

On Friday, June 29, 2012, Plaintiff Melissa Fewins took her six-year-old son, D.A.F, to the emergency room at LGMC because he had been complaining of pain in his left leg since suffering a fall six days earlier. Plaintiffs did not have health insurance. Upon D.A.F.'s arrival at LGMC, the nursing staff performed a triage assessment and measured his vital signs, which were normal. D.A.F. rated his pain as a ten, using the Wong-Baker face scale, on a one-to-ten scale, with ten as the worst pain ever. Defendant Scott Jones, M.D., a board certified emergency

1

medicine physician, also examined D.A.F. and noted contusions on both hips. Dr. Jones ordered lab tests and a CT scan of D.A.F.'s lower extremities and pelvis. The results of those tests were generally normal, except that D.A.F.'s white blood cell count was elevated and the CT scan showed subcutaneous contusions and a hematoma/seroma on the right hip. Dr. Jones diagnosed D.A.F. with contusions on both hips and discharged the child from the LGMC emergency room with instructions that he take Tylenol with codeine for pain, and follow-up with his pediatrician on Monday, July 2. The next day, however, Plaintiffs took D.A.F. to the emergency room at Cook Children's Medical Center ("CCMC"). On arrival, D.A.F. had a fever and swelling and tenderness in his left leg. D.A.F.'s white blood cell count was lower than it had been on Friday, and other test results suggested he was suffering from a bacterial infection. CCMC admitted D.A.F. to the hospital and began administering antibiotics. D.A.F. remained hospitalized from June 30 to August 10, during which time he underwent several surgeries and was treated for a methicillin-resistant staphylococcus aureus ("MRSA") infection. D.A.F. has permanent bone damage and is at risk for future injuries and infection. Plaintiffs contend that D.A.F. would have experienced a better outcome if LGMC had administered antibiotics to him on June 29, and transferred him to a pediatric medical center.

Plaintiffs allege LGMC violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C.A. § 1395dd, by failing to provide D.A.F. with an appropriate medical screening examination to determine whether D.A.F. had an emergency medical condition. According to Plaintiffs, LGMC did not give D.A.F. the same medical screening examination it provided to other patients with the same or similar signs and/or symptoms; nor did the hospital provide D.A.F. with a medical screening examination that was consistent with the applicable national standard of care. Plaintiffs further allege D.A.F. had an emergency

medical condition that was not stabilized while he was at LGMC, and the hospital discharged, or "dumped," him from its emergency room because he was uninsured, in violation of EMTALA. In the alternative, Plaintiffs contend that LGMC was negligent with respect to the care and treatment provided to D.A.F.

LGMC moved for summary judgment as to all of Plaintiffs' claims and causes of action, arguing that Plaintiffs' EMTALA screening claims fail because Dr. Jones performed an appropriate medical screening examination and there is no evidence that LGMC provided a higher level of screening to other patients who presented with substantially similar complaints. LGMC further argued that Plaintiffs' EMTALA stabilization claims fail because Dr. Jones did not diagnose an emergency medical condition. Finally, LGMC argued that it is entitled to summary judgment on Plaintiffs' negligence claims because there is no evidence of negligence. Plaintiffs disputed LGMC's arguments and asserted they are entitled to partial summary judgment because they established, as a matter of law, that the hospital violated EMTALA when it failed to provide an appropriate medical screening examination to D.A.F. and discharged him with an unstabilized emergency medical condition.  The issues were fully briefed and argued at a hearing held on August 7, 2015.  At the conclusion of the hearing, the Court granted Defendants' motion for summary judgment and denied Plaintiffs' motion for partial summary judgment.  The reasons for the Court's decisions are set forth below.

## II.  Legal Standards

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A dispute as to a material fact is genuine, if the evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party. *Crowe v. Henry*, 115 F.3d 294, 296 (5th

Cir. 1997). A fact is material if its resolution could affect the outcome of the action. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co*., 340 F.3d 233, 235 (5th Cir. 2003). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). A party seeking summary judgment who does not have the burden of proof at trial, like LGMC here, need only point to the absence of admissible evidence to support the nonmovant's claim. *See Duffy v. Leading Edge Prods., Inc*., 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the burden shifts to the nonmoving party to produce evidence or designate specific facts in the record showing the existence of a genuine issue for trial. *See Fordoche, Inc. v. Texaco, Inc*., 463 F.3d 388, 392 (5th Cir. 2006). By contrast, a movant who bears the burden of proof at trial, such as Plaintiffs, must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original). The "beyond peradventure" standard is a "heavy" burden. *See Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923–24 (N.D. Tex. 2009).

III. Analysis

A. EMTALA

EMTALA is an anti-patient dumping statute, enacted to prevent hospitals from refusing to treat patients because of their non-insured status or inability to pay. *Marshall v. E. Carroll Parish Hosp. Serv. Dis't*., 134 F.3d 319, 322 (5th Cir. 1998). EMTALA requires a hospital to provide any person who presents to the emergency room "an appropriate medical screening examination . . . to determine whether or not an emergency medical condition exists." 42 U.S.C. § 1395dd(a). An emergency medical condition is "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate

medical attention could reasonably be expected to result in (i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." *Id.*, § 1395dd(e)(1). If the hospital determines that such a condition exists, the hospital must either stabilize the person's condition, or, under certain circumstances, transfer the individual to another medical facility. *Id.*, § 1395dd(b). The Act provides a private cause of action to a person who suffers harm as a direct result of an EMTALA violation. *Id.*, § 1395dd(d)(2)(A).

1. Screening Claim

Plaintiffs first contend that LGMC violated EMTALA because it failed to provide D.A.F. an "appropriate medical screening examination." EMTALA does not define what constitutes an "appropriate screening examination," but the Fifth Circuit has held that such an examination is "a screening examination that the hospital would have offered to any other patient in a similar condition with similar symptoms." *Guzman v. Mem. Hermann Hosp. Sys.*, 409 F. App'x 769, 773 (5th Cir. 2011) (quoting *Marshall*, 134 F.3d at 323). Whether an examination is considered an "appropriate medical screening examination" is determined "by whether it was performed equitably in comparison to other patients with similar symptoms," not "by its proficiency in accurately diagnosing the patient's illness." *Marshall*, 134 F.3d at 322. A plaintiff may prove an EMTALA violation by (1) pointing to differences between the screening examination that the plaintiff received and examinations that other patients with similar symptoms received at the same hospital; (2) showing that the hospital did not follow its own standard screening procedures; or (3) showing that the hospital provided such a cursory screening that it amounted to no screening at all. *Guzman*, 409 F. App'x at 773; *Battle v. Mem. Hosp. at Gulfport*, 228 F.3d 544, 558 (5th Cir. 2000).

Judged against these standards, the Court concludes, based on the factual record, that LGMC provided D.A.F. an "appropriate medical screening examination," as required by EMTALA. The summary judgment evidence shows that LGMC nurses completed a triage assessment and measured D.A.F.'s vital signs within a few minutes of the first time he presented to the emergency room. LGMC App. at 6, 136. Shortly thereafter, Dr. Jones, a board-certified emergency medicine physician, also examined D.A.F. *Id.* at 2, 27. Dr. Jones's examination consisted of taking a patient history from D.A.F. and his mother, and conducting a physical examination, including a neurological motor exam. *See id.* at 2-3, 51 & 56. The initial examination lasted approximately fifteen minutes. *See id*. at 2. Dr. Jones ordered various laboratory tests, including blood tests consisting of a Basic Metabolic Panel and a Complete Blood Count, as well as a urinalysis. *Id.* at 4, 57. He also ordered a CT scan of D.A.F.'s lower extremities and pelvis. *Id.* While D.A.F. and his mother were waiting for the results of these tests, LGMC nurses monitored D.A.F. and assessed his vital signs. *Id.* at 7, 8. The nurses consistently noted that D.A.F. exhibited no neurological, cardiovascular, or respiratory problems. *Id.* Dr. Jones reviewed the test results and discussed the CT scan with LGMC's staff radiologist. *Id.* at 3, 60-61. Dr. Jones then reevaluated D.A.F., found his vital signs to be stable, and diagnosed D.A.F. with contusions on both the right and left hip. *Id.* at 3, 4. Dr. Jones concluded D.A.F. was stable and ordered that he be discharged from the emergency room. *Id.* at 4. This is not the type of screening that was so cursory that it amounted to no screening at all.

Plaintiffs attempt to establish a fact question regarding alleged disparate screening by pointing to medical records from three other patients they contend had symptoms similar to those of D.A.F. but were admitted to the hospital for further evaluation and treated with antibiotics. The first comparator patient was an 81-year-old man who, like D.A.F., presented to the LGMC

emergency room complaining of lower leg pain. *See* LGMC App. at 580-96. Initial lab tests revealed his white blood cell count was elevated. *Id.* However, the patient also had a history of serious medical conditions, including recent cellulitis, for which he was taking penicillin, prescribed by an infectious disease specialist. *Id.* The second comparator was an obese, 58-year-old man who presented to LGMC with hip pain; initial tests revealed a higher than normal white blood cell count. *Id.* at 597-645. He had a medical history of asthma, congestive heart failure, hypertension, diabetes, renal failure, and atrial fibrillation. *Id.* He was taking at least ten prescription medications for his long-standing, various health concerns at the time he presented to LGMC. *Id.* The third comparator was a 79-year-old female suffering from dementia, who presented to LGMC with a sudden onset of weakness and pain in her right knee. *Id.* at 646-77. Her lab test results showed a high white blood cell count. *Id.* The woman had previously had surgery on her knee and had a prosthesis. *Id.*

EMTALA is implicated only when other individuals who are perceived to have the same medical condition receive disparate treatment. *Marshall*, 134 F.3d at 323 (citing *Vickers v. Nash General Hosp., Inc.*, 78 F.3d 139, 144 (4th Cir. 1996). Here, none of the alleged comparator patients were perceived to have the same medical condition as D.A.F. Dr. Jones perceived D.A.F., a pediatric patient who was otherwise in good health, to be suffering from pain caused by a fall; he did not perceive that D.A.F. might be suffering from an infection. By contrast, the screening doctor at LGMC clearly perceived the 81-year-old man, who had a history of drug-resistant cellulitis on the same leg, to have cellulitis. LGMC App. at 580-96. The doctor who initially screened the 58-year-old man did not perceive him to be suffering pain from a fall. Rather, he determined further evaluation was required, because there was no known trauma or injury to explain the hip pain, and there were multiple other chronic conditions that could be causing his complaints. *Id.* at 597-645. Dr. Jones screened the 79-year-old woman, but never perceived her to

be suffering pain from a fall. *Id*. at 646-77. Because Plaintiffs have failed to identify comparator patients who were perceived to have the same symptoms to D.A.F., they have failed to raise a genuine fact issue that LGMC violated EMTALA by disparate screening.

To the extent Dr. Jones failed to appreciate the nature of D.A.F.'s condition or failed to order additional testing to rule out infection as the cause of his complaints, such failures do not implicate EMTALA. EMTALA is not a substitute for state law malpractice actions, and was not intended to guarantee a proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence. *See Marshall*, 134 F.3d at 323-24; *Martinez v. Porta*, 598 F. Supp. 807, 813 (N.D. Tex. 2009).

Plaintiffs also contend that LGMC violated its pain management policy, which calls for additional consideration of the possibility of infection where the patient complains of pain. According to Plaintiffs, the evidence shows that LGMC nurses were aware of D.A.F.'s inconsistent complaints of pain, yet D.A.F. was discharged without any additional or more specific tests to determine whether his pain was caused by an infection. However, Plaintiffs have not shown that LGMC's pain management policy is an emergency room screening policy which provides the basis of an EMTALA claim. Instead, the evidence shows that the pain policy is a hospital wide nursing policy that has nothing to do with screening for emergency medical conditions.

The Court therefore concludes that the record establishes that LGMC provided D.A.F. an "appropriate medical screening examination," as required by EMTALA, and grants summary judgment in favor of LGMC, and against Plaintiffs, on the screening claim.

2. Stabilization Claim

Plaintiffs also claim that LGMC violated EMTALA by failing to stabilize D.A.F.'s condition prior to discharge.  EMTALA requires a hospital to stabilize a patient's emergency medical condition.  *See* 42 U.S.C. § 1395dd(b)(1).  However, the duty to stabilize does not arise unless the hospital has actual knowledge that the patient has an emergency medical condition. *See Marshall*, 134 F.3d at 325; *Battle*, 228 F.3d at 558.  The statute defines emergency medical condition as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual . . . in serious jeopardy; (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part[.]" 42 U.S.C. § 395dd(e)(1)(A).

In this case, it is undisputed that Dr. Jones diagnosed D.A.F. with a contusion, which is not an emergency medical condition. *See* LGMC App. at 4.  Dr. Jones's explanation of his findings plainly demonstrates that he did not perceive D.A.F. to have an emergency medical condition:

> Despite very complete and complex evaluation, no evidence of anything other than a contusion/hematoma. Suspect some element of muscle strain as well. Patient's symptoms clearly vary depending on who is in the room. When left alone with Radiology, nursing or physician, he has no complaints and ranges both legs well. When mother is present he begins crying and complaining of pain. [sic] discussed this with mother and she agrees that patient sometimes "plays up" injuries with her, and notes that he played video games all day with his father yesterday without complaint. I suspect he is, indeed, having some pain. However, do not see any evidence of serious etiology.

*Id*.  Under EMTALA, the actual diagnosis is taken as a given, and hospitals are only obligated to stabilize conditions they detect.  *Guzman*, 637 F. Supp. 2d 464, 508 (S.D. Tex. 2009), *aff'd*, 409

9

F. App'x 769 (5th Cir. 2011).  Because what Dr. Jones perceived D.A.F. to have was not an emergency medical condition, LGMC's duty to stabilize D.A.F.'s condition was never triggered. LGMC is therefore entitled to summary judgment on Plaintiffs' stabilization claim.

### B.  Negligence

Finally, LGMC moves for summary judgment on Plaintiffs' alternative claim for negligence under the Texas Emergency Medical Care Statute.  Section 74.153 of the Texas Civil Practice and Remedies Code governs health care liability claims for injuries or death arising from the provision of "emergency medical care" in a hospital emergency department.  Under this statute, a plaintiff may prove that treatment or lack of treatment by a physician or health care provider departed from accepted standards of medical care only if the plaintiff "shows by a preponderance of the evidence that the physician or health care provider, *with wilful and wanton negligence*, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health care provider in the same or similar circumstances."  Tex. Civ. Prac. & Rem. Code Ann. § 74.153 (emphasis added).  The "wilful and wanton negligence" standard is equivalent to the gross negligence standard.  *Turner v. Franklin*, 325 S.W.3d 771, 776 (Tex. App. -- Dallas 2010, pet. denied).  Here, Plaintiffs have not offered competent summary judgment evidence that LGMC's nurses engaged in any willful and wanton negligence that would support a claim against the hospital.  To the contrary, both Dr. Jones and Plaintiffs' medical expert testified that they had no criticism of the care provided by the nurses.  LGMC App. at 70, 90.  *See* Hrg. Transcript at 41 (Plaintiffs' counsel stating that, except as to EMTALA, Plaintiffs have not made any claims against the nurses or the hospital).  LGMC is therefore entitled to summary judgment on Plaintiffs' negligence claim.

IV. Conclusion

For the reasons stated, LGMC's Motion for Summary Judgment [Docket Entry #54] is GRANTED, and Plaintiffs' Motion for Partial Summary Judgment [Docket Entry #61] is DENIED.

The Court severs Plaintiffs' claims against LGMC from the rest of Plaintiffs' claims, and stays all claims in this litigation other than Plaintiffs' claims against LGMC.

**SO ORDERED**.

January 25, 2016.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**